UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SUSAN GIBBENS | CIVIL ACTION |
| VERSUS | NO. 11-868 |
| CHAMPION INDUSTRIES, INC. | SECTION "C" (4) |

ORDER AND REASONS

This matter comes before the Court on reurged motion for summary judgment on contract formation filed by Champion Industries, Inc. ("Champion"). Rec. Doc. 142. Having considered the record, the memoranda of counsel and the law, the Court rules as follows.

The plaintiff, Susan Gibbens ("Gibbens"), filed this claim in diversity for breach of contract seeking additional commissions allegedly owed by her current employer, Champion. The Court previously denied a motion for summary judgment on contract formation filed by Champion by Order and Reasons dated September 12, 2012, prior to the continuance of the October 9, 2012, trial due to lack of preparation.[1] Rec. Docs 59,

---

[1] The Court is also issuing a separate order and reasons ruling on the motion to strike plaintiff's proposed expert, Matthew C. Person, and his report. Rec. Doc. 133. That ruling sets forth in greater detail the problems that led to the continuance of this trial setting.

101. That first motion for summary judgment focused on three alleged shortcomings in the November 2006 email exchange between plaintiff and her supervisor, Doug McElwain ("McElwain") relative to the alleged change in the plaintiff's commission formula:[2] (1) lack of consent (offer and acceptance); (2) lack of cause for contracting; and (3) lack of capacity. Rec.Doc. 41. The Court's denial was based on the evidence developed at that time. The plaintiff's position was that the email was merely evidence of a year earlier modification of the plaintiff's contract by McElwain. Rec. Docs. 59, 46 at 18.

In this reurged motion, the defendant relies on additional evidence to argue that it is undisputed that at no time did McElwain have actual or apparent authority to change the plaintiff's commission formula and that Champion did not have cause to

---

[2] In that email exchange, Gibbens asked McElwain for confirmation "that we split the net profit 50/50 if it's printed in Baton Rouge and 60/40 if it's printed anywhere else." McElwain responded that Gibbens should contact corporate for the answer to her questions about how commissions are calculated. The next day, Gibbens again emailed McElwain: "My question to you is more general. At the beginning of the year when you switched me from my old commission formula to the Bourque system at one point you said the split as 50/50 for jobs printed in Baton Rouge and 64/36 for sublet jobs and at another time I have written down that the sublet is 60/40. I just need to know which it is so that I'm using the right formula on my spreadsheet." Rec. Doc. 41-4. This time, McElwain responded "You make 36% on anything that is sublet. The 18% pack is for the warehouse operating expense and should be treated separately." It appears that the plaintiff may be now challenging the application of that portion of the email relative to the 36% sublet and/or the 18% "pack" as well.

change the plaintiff's commission formula. Rec. Doc. 142. The plaintiff opposes with the arguments that a "binding contract" regarding the alleged modification of commissions was formed by virtue of the representations of McElwain and the corporate headquarter's failure to respond to her communications, that cause existed because the plaintiff "was a very successful salesperson" and that McElwain had actual and/or apparent authority and/or Champion ratified the change in the commission formula. Rec. Doc. 144 at 22–25.

Rule 56 of the Federal Rules of Civil Procedure states: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56. When considering whether any genuine issues of material fact exists, courts view the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *United States ex re. Reagan v. East Texas Medical Center Regional Healthcare System*, 384 F.3d 168, 173 (5th Cir. 2004) (*citing Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986)). A factual dispute

precludes summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (*citing Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the nonmoving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1996). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

It is undisputed that Gibbens worked for Upton Printing ("Upton") in New Orleans beginning in 1995 with a commission formula of "11% value added." Upton was acquired by Champion and the plaintiff's commission formula did not change. The plaintiff alleges that it did change in 2006 when she was "placed" in the Baton Rouge office of Bourque Printing, Inc. ("Bourque"), a wholly owned subsidiary of Champion, under McElwain's supervision. For purposes of this motion, the Court finds that the plaintiff has shown a genuine issue of material fact as to whether McElwain did represent to Gibbens that he was going to modify her commission formula to the "Bourque" formula allegedly applicable to the Bourque salespeople he supervised in Baton Rouge.

Turning first to the issue of capacity, it should be noted that in the first motion, the defendant argued a lack of capacity "because both the e-mail exchange and Gibbens' testimony establish that McElwain did not have the capacity to increase her commission percentage," based on the email exchange and the deposition testimony of Gibbens and McElwain. Rec. Doc. 41 at 1–2, 41-3 at 12. This reurged motion asks for reconsideration with additional evidence including the sworn and unrebutted statements from McElwain and the officers at the Champion headquarters who were empowered to modify the rate of a salesperson's commission. Rec. Doc.142-4, 142-5,

142-6. This record now contains undisputed evidence that McElwain did not have actual or apparent authority to modify the commission agreement at any time, nor was it ratified by the defendant.

In his deposition testimony, McElwain testified that he did not set commissions, keep track of commissions, or have any idea what salespeople make. Rec. Doc. 41-6 at 51. In his more recent affidavit, he states that he was "simply stating what I thought her commission structure was" in the email exchange and that he never recommended directed anyone to change her commission structure. Rec. Doc. 142-4 at 3. The affidavits of those who undisputedly had that authority, Toney Adkins ("Adkins") and Marshall Reynolds ("Reynolds") confirm that Gibbens was always paid on an "11% value added" commission formula, that neither conveyed to Gibbens that McElwain had that authority to change that formula, and that McElwain did not, in fact, have that authority.[3] Rec. Docs. 142-5 at 2, 142-6 at 2. Gibbens opposes with the argument that because McElwain was in charge of operations in New Orleans and a corporate vice-president, he had authority. Rec.Doc. 144. She admits that no one in corporate told the plaintiff that her commissions would be modified. Rec. Doc. 144 at 24. The plaintiff also relies on the deposition testimony from a former co-worker in accounting that at

---

[3] It appears that the plaintiff chose not to depose either of these affiants.

one time McElwain had asked for five months of commission reports on Gibbens because he said he was going to change her formula, and a statement from a commissioned co-salesman in Baton Rouge that McElwain set the commission rates in Baton Rouge and that his commissions were consistent with the "Bourque" formula.[4] Rec.Doc. 144-7 at 3. Gibbens also argues that McElwain had "actual or at least apparent authority to set Ms. Gibbons' [sic] commission schedule, and/or that Champion ratified the commission schedule he set" because for approximately four years, no one at corporate headquarters would respond to her demands and/or accountings that additional commissions were owed. Rec. Doc. 144 at 24–25.

The plaintiff can present no proof that McElwain had any actual[5] or apparent[6]

---

[4] There appears to be no dispute that the "Bourque" formula was in use at the Baton Rouge office prior to the plaintiff's transfer there, or that McElwain correctly described the "Bourque" formula in the emails. Instead, the issue is whether the plaintiff's commission formula was changed to that method and, more specifically, whether McElwain had authority to make that change after Gibbens arrived in Baton Rouge.

[5] Under La.Code.Civ. art. 2989: "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal."

[6] Under La.Civ.Code art. 3021: "One who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary." There must be some manifestation from the principal for the third person to have notice of the mandatary's authority. *Tresch v. Kilgore*, 868 So.2d 91 (La.App.1st Cir.2003).

authority to change her commission formula under Louisiana law.  The Court also finds that no one in corporate headquarters made any change in her commissions. Under the undisputed facts, corporate's inaction only suggest that they were ignoring her repeated demands, not that they were "ratifying" McElwain's unauthorized statement.  McElwain repeatedly advised the plaintiff that she needed to direct inquiries as to commissions to headquarters after the initial alleged "change."  Furthermore, Gibbens was <u>never</u> paid commissions at the alleged new rate over a period of four years despite her repeated demands.  Her insistence is not the equivalent of ratification under these undisputed facts.

    Gibbens may have felt that it was unfair for her commission rate not to be changed to the one apparently applicable to the others in the Baton Rouge office when she was placed there as a former Upton employee with the Upton commission formula. Gibbens expended great effort to obtain the corporate authority and/or ratification she knew she needed to make her argument that McElwain's alleged statement was effective.  Her endeavor was unsuccessful, however, and in this contract case, she is unable to establish express or implied consent of those with the authority to make the change in her commission formula, or ratification.

    Accordingly,

IT IS ORDERED that the reurged motion for summary judgment on contract formation filed by Champion Industries, Inc. is GRANTED. Rec. Doc. 142.

New Orleans, Louisiana, this 20th day of March, 2013.

HELEN G. BERRIGAN
UNITED STATES DISTRICT COURT